UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| H&H PHARMACEUTICALS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHATTEM CHEMICALS, INC.; and SUN PHARMACEUTICALS INDUSTRIES, INC.,<br><br>Defendants. | Case No. 2:16-cv-02148-CDS-EJY<br><br>**ORDER and<br>REPORT AND RECOMMENDATION** |

Pending before the Court is Plaintiff H&H Pharmaceuticals' Motion for Leave to File Second Amended Complaint (ECF No. 157). The Court considered Plaintiff's Motion, Defendants' Opposition (ECF No. 163), and Plaintiff's Reply (ECF No. 164).

**I.   Background**

Plaintiff initiated this case in state court on August 9, 2016 alleging Defendants violated a Settlement Agreement that resolved prior litigation. ECF No. 1 at 5-20.[1] Defendants timely removed the case to federal court on September 12, 2016, and Plaintiff filed its First Amended Complaint ("FAC") shortly thereafter. ECF No. 8. The FAC asserted eleven causes of action arising from Defendants' alleged breach of the Settlement Agreement, including contract and tort-based theories of recovery. *Id.*

On January 23, 2020, the Court granted, in part, Defendants' Motion to Dismiss holding that several of Plaintiff's tort claims were insufficiently pleaded. ECF No. 58 at 29. The Court also granted Plaintiff twenty-one days to file an amended complaint curing any deficiencies. *Id.* Plaintiff did not file another amended complaint,[2] and the case proceeded on the portions of Plaintiff's FAC that survived dismissal. On December 28, 2022, the Court granted summary judgment in favor of

---

[1] The prior litigation, *H&H Pharms., LLC v. Chattem Chems., Inc.*, Case No. 2:07-cv-00430 (D. Nev.) (filed April 3, 2007) (hereinafter "*H&H I*") involved allegations that Defendant Chattem Chemicals breached a nondisclosure agreement ("NDA") by, *inter alia*, disclosing and misappropriating confidential information obtained from Plaintiff to apply for licenses issued by the Drug Enforcement Agency ("DEA"). *See* ECF No. 89-11 at 18-19 filed in the instant matter.

[2] Plaintiff misstates the record in its Motion, asserting that "[t]here's no history of H&H being allowed to cure deficiencies and failing to do so." ECF No. 157 at 26.

Defendants on all remaining claims. ECF No. 121. In its Order, the Court held Plaintiff failed to establish proof of damages for all but one of the remaining claims, noting that the only measure of damages asserted, disgorgement of profits, was unavailable under Nevada law except where authorized by statute. *Id.* at 7 (citing *Mitchell v. Nype*, 517 P.3d 905, 906 n.3 (Nev. 2022)). Regarding Plaintiff's constructive fraud claim, the Court held Plaintiff failed to establish the existence of a confidential relationship. *Id.* at 9.

The Court's decision was appealed to the Ninth Circuit, which affirmed the grant of summary judgment as to Plaintiff's contract claims, but noted that the previously dismissed tort-based claims might survive as a claim for misappropriation of trade secrets under Nevada's Uniform Trade Secrets Act ("UTSA"). ECF No. 137. The Ninth Circuit remanded the case for the Court to consider whether Plaintiff's FAC properly stated a claim under the UTSA and, if not, whether Plaintiff should be given leave to amend. *Id.* at 7.

**II.   Discussion**

Plaintiff asserts that although its FAC does not expressly state a claim under the UTSA, this omission is inconsequential because it is the factual allegations in support of a claim, rather than formal labels, that determine a claim's merit. ECF No. 157 at 9. Plaintiff argues in the alternative that it should be given leave to add a UTSA claim because (1) of the unique posture of this case, and (2) the standards of both Federal Rule of Civil Procedure 15 and 16 are met. *Id.* at 10-21. Defendants respond that Plaintiff failed to diligently pursue a misappropriation of trade secrets claim and should not be permitted to fix that omission now. ECF No. 163. Defendants point to the years-long history of this case and Plaintiff's failure to file an amended complaint despite multiple opportunities to do so. *Id*. The Court considered each of these arguments and concludes that Plaintiff did not properly plead a misappropriation of trade secrets claim in its FAC, but that there is good cause to grant Plaintiff leave to file a Second Amended Complaint.

A.   <u>Plaintiff's FAC Does Not State a Misappropriation of Trade Secrets Claim</u>.

Although the Court agrees that the specific label given to a claim is not determinative, the allegations pleaded in support of a claim must still satisfy the elements of a valid cause of action. *Salazar v. Regents of the Univ. of Cal.*, 812 Fed.Appx. 410, 412-13 (9th Cir. 2020) ("[E]ven a liberal

interpretation of a … complaint may not supply essential elements of the claim that were not initially pled." (quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). Caselaw from other jurisdictions, cited by Plaintiff, does not suggest otherwise. *LaRoe v. Cassens & Sons, Inc.* held that claims labeled "strict liability" stated what were in fact the elements of a breach of warranty claim and could proceed. 472 F.Supp. 2d 1041, 1047 (S.D. Ill. 2006). Similarly, *Surgical Instrument Service, Inc. v. Intuitive Surgical, Inc.* held that the allegations pleaded under a single count of a complaint actually satisfied the elements of two separate claims. 571 F.Supp. 3d 1133, 1141 n.6 (N.D. Cal 2019). In each case, the elements of a viable claim was properly pleaded, albeit under an inaccurate label.

When bringing a misappropriation of trade secrets claim under the UTSA, the plaintiff must plead the following elements:

> (1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) … that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose.

*Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000) (internal citations omitted). In *Frantz*, the Nevada Supreme Court allowed a claim for common law misappropriation of trade secrets to proceed as a claim under the UTSA despite not being labeled as such. *Id.* This was because the UTSA "merely codifie[d] the common law elements of misappropriation of confidential information" that the plaintiff already pleaded. *Id.* The takeaway of *Frantz*, then, is not that unrelated causes of action may be liberally construed as misappropriation claims, but that a claim pleaded as common law misappropriation of trade secrets may nonetheless proceed as a UTSA claim when the elements of the claim are properly pled. Thus, the obstacle Plaintiff must surmount is not that its FAC does not include a claim titled "Violation of the UTSA," ECF No. 157 at 10, but whether Plaintiff properly alleged misappropriation of trade secrets under any label, statutory or common law.

To satisfy the first element of a misappropriation claim a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade … and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Aristocrat Techs., Inc. v. Light & Wonder, Inc.*, Case No. 2:24-cv-00382-

3

GMN-MDC, 2024 WL 3104806, at *4 (D. Nev. June 24, 2024) (quoting *Pellerin v. Honeywell Int'l, Inc.*, 877 F.Supp. 2d 983, 988 (S.D. Cal. 2012)). In paragraph 10 of the FAC Plaintiff alleges: "Prior to 1979, Hack developed, and then contributed to H&H in 1999, floor-level chemistry and conversion processes, not available on the open marketplace and not generally publicly known, for converting raw opium and concentrate of poppy straw into opiate-based raw materials by chemical extraction, recovery and conversion methods (the 'H&H Conversion Methods')." ECF No. 8 ¶ 10. Paragraph 11 of the FAC states Plaintiff's trade secrets meet the UTSA's definition of trade secrets "including, without limitation, *certain aspects* of the H&H Conversion Methods …." *Id*. ¶ 11 (emphasis added). The FAC further alleges that Plaintiff's Trade Secret Manual contained "business methods, marketing strategies, and technological processes that H&H had created and used in their manufacture of certain controlled substances. The processes included the following: Raw Gum Opium Processing into Alkaloids, Thebaine and Codeine Isolation from Opium, Codeine Synthetic Methylation, and Morphine Crude from Dutch/French Poppy Straw Concentrate." *Id*. ¶ 22.

Even assuming these paragraphs provide some information regarding Plaintiff's trade secrets, a review of the FAC demonstrates the gravamen was Defendant Chattem's alleged failure to notify Plaintiff of its purchase by Defendant Sun. *Id*. ¶¶ 41-46, 49, 51, 62, 67, 70, 79-80, 86, 101, 112-113, 126. Despite these numerous paragraphs, Plaintiff argues the disclosure of its trade secrets underlay all claims asserting Defendants breached the Settlement Agreement. However, this allegation appears in only one paragraph of the FAC. *Id*. ¶ 53.

The Court finds paragraphs 10, 11, 22, and 53, together, are insufficient to meet the pleading requirement of a misappropriation of trade secrets claim. The FAC, as a whole, fails to explain which of the "certain aspects of the H&H Conversion Methods" are trade secrets and which are merely confidential information. This is a distinction with a difference. *See Newmark Group, Inc. v. Avison Young (Canada) Inc.*, Case No. 2:15-cv-00531-RFB-EJY, 2019 WL 575476 (D. Nev. Jan. 7, 2019) (distinguishing between a statutory claim for misappropriation of trade secrets under the UTSA and a claim for misappropriation of confidential information, which may still be brought under the common law).

Moreover, there was nothing about bringing breach of contract claims that precluded Plaintiff from also alleging a trade secrets claim. Plaintiff surely understood this as its complaint in *H&H I* included a claim for breach of the NDA as well as claims for misappropriation of trade secrets and confidential information. *See* ECF No. 89-11 at 19. The Court does not doubt that Plaintiff believes Defendants misappropriated its trade secrets or that this alleged misappropriation may have underlain Plaintiff's decision to bring suit for breach of contract, but this belief did not *sub silentio* incorporate within that claim a separate and distinct claim for misappropriation of trade secrets.

   B.  <u>Plaintiff's Proposed Second Amended Complaint</u>.

Having determined that Plaintiff did not properly plead a misappropriation of trade secrets claim in the FAC, the Court next considers whether Plaintiff should be granted leave to file a second amended complaint ("proposed SAC") that includes this claim. Rule 15 of the Federal Rules of Civil Procedure provides that once twenty-one days have elapsed from serving the original pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. Pro. 15(a)(2). The Court should nevertheless freely grant leave when justice so requires. *Id*. A Court need not grant leave to amend where the amendment (1) prejudices the opposing party, (2) is sought in bad faith, (3) produces an undue delay in litigation, or (4) is futile. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020); *Foman v. Davis*, 371 U.S. 178, 182 (1962).[3]

Plaintiff's proposed SAC consists of four Counts: (1) a claim for misappropriation of trade secrets under the UTSA; (2) a claim for breach of the NDA and Settlement Agreement under NRS 600A.090(2)(a); (3) a claim for a statutory injunction under NRS 600A.040; and (4) a claim for declaratory judgment declaring the Settlement Agreement an executory accord. ECF No. 157-1 at 12-16. For the reasons discussed below, the Court grants Plaintiff's leave to amend as to Count One, but recommends denying leave to amend with respect to Counts Two, Three, and Four.

    *1.*  *Count One: Misappropriation of Trade Secrets.*

In addition to the allegations in the FAC, Plaintiff's first claim in the proposed SAC asserts facts that provide the particularity sufficient to state a misappropriation of trade secrets claim under the UTSA. ECF No. 157-1 ¶¶ 9, 10, 13, 24, 30, 31. Together, these paragraphs allege Chattem was

---

[3] The four factors for consideration are referenced herein as the "*Foman* factors."

5

informed of and understood the outer boundaries of Plaintiff's trade secrets as well as what was allegedly misappropriated. While this is a somewhat close call, the Court finds the totality of allegations sufficient to meet the applicable pleading standard.

Despite this finding, and for the sake of completeness, the Court nonetheless analyzes the *Foman* factors and begins with futility because, if allowing the claim to proceed is futile, no other *Foman* factor need be analyzed. "Leave to amend should be denied as futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Bright People Foods v. Alliance Sales & Marketing MW, Inc.*, Case No 2:24-cv-00060 WSB AC, 2024 WL 3697554, at *1( E.D. Cal. Aug. 7, 2024) *citing Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

As stated, the Court finds the misappropriation claim is not futile. Even if further leave to amend is ultimately granted after anticipated motion practice, the Court cannot conclude there is no set of facts Plaintiff can allege that would state a misappropriation claim. That is, Defendants argue Plaintiff cannot state a claim under the UTSA because there is no evidence Defendants ever used or disclosed Plaintiff's trade secrets. ECF No. 163 at 6-9. However, this argument is belied by paragraphs 30 and 31 in the proposed SAC. Further, arguments regarding the sufficiency of the evidence are more properly brought in a motion for summary judgment. At this stage, all the Court must decide is whether, taking all allegations as true, Plaintiff has properly stated a claim upon which relief may be granted. *See Farina v. Compuware Corp.*, 256 F.Supp. 2d 1033, 1061 (9th Cir. 2003) ("The standard of review is akin to that undertaken by a court in determining the sufficiency of a pleading challenged in a Rule 12(b)(6) motion to dismiss."). The Court finds that although the proposed SAC could define Plaintiff's trade secrets with even more particularity than it does, the added description in the paragraphs cited above provides sufficient notice as to the outer boundaries of the trade secrets at issue. The Court further finds the facts pleaded in the proposed SAC, taken as true, sufficiently allege misappropriation by Defendants in obtaining DEA licenses. ECF No. 157-1 ¶¶ 59-61.

With respect to undue delay, the Court finds none. The Court finds the short passage of time after the Ninth Circuit directed assessment of whether Plaintiff should be granted leave to amend,

together with the District Judge's June 21, 2024 instruction to Plaintiff to file a motion to amend, are contrary to the conclusion that Plaintiff unduly delayed its instant Motion. Case law also makes clear that the risk of delay alone "is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (1987).

The Court's analysis also leads to the finding that Defendants will not suffer undue prejudice if Plaintiff is allowed to amend its FAC to include a misappropriation claim. Although Defendants argue that continued litigation itself is prejudicial due to the significant costs already incurred litigating this case through summary judgment, ECF No. 163 at 18, the Ninth Circuit holds that in the absence of bad faith, "litigation expenses incurred before a motion to amend is filed do not establish prejudice." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). Here, there is no evidence of bad faith. Defendants point to Plaintiff's failure to raise a misappropriation of trade secrets claim when earlier given the opportunity to do so. However, this choice, made as part of litigation strategy, wise or unwise, does not amount to bad faith. The Nevada Supreme Court decision on which the Court relied in disposing of Plaintiff's contract claims was issued in 2022. ECF No. 121 at 7 (citing *Mitchell*, 517 P.3d at 906 n.3). This was six years after Plaintiff filed the FAC, and two years after the deadline to amend expired. This decision was also contrary to previous decisions of this District and Nevada state courts that had awarded disgorgement of profits for claims under Nevada common law. *See, e.g.*, *Women's Fed. Sav. & Loan Ass'n v. Nev. Nat'l Bank*, 673 F.Supp. 401 (D. Nev. 1987) (awarding disgorgement of profits as remedy for breach of fiduciary duty); *Full Spectrum Laser v. Co. V.*, 2013 Nev. Dist. LEXIS 4040 (awarding the same). In sum, Plaintiff is granted leave to amend to assert its misappropriation of trade secrets claim under the UTSA.

 *2.   Count Two: Breach of NDA and Settlement Agreement.*

Plaintiff's second claim in the proposed SAC is a breach of contract claim alleging violations of the NDA and the Settlement Agreement. ECF No. 157-1 at 14. Plaintiff's FAC alleged breach of these same agreements. ECF No. 8 ¶¶ 52, 53, 68. The District Court granted summary judgment on all of the allegations in Plaintiff's FAC that appeared in its breach of contract claim, and the Ninth Circuit affirmed. ECF Nos. 121 at 7; 137 at 6. Importantly, Plaintiff's proposed SAC alleges no

breach of contract subsequent to what is alleged in the FAC. ECF No. 157-1, generally. Apparently recognizing this problem, Plaintiff argues it is not reasserting its previous breach of contract claims, but instead is asserting a new breach of contract claim under the UTSA contending Defendants ignored the distinction between contract claims and contract remedies. ECF No. 164 at 10.

First, and oddly, Plaintiff cites NRS 600A.090(2)(a) as the basis for its revived breach of contract claim. ECF No. 157-1 at 14:11-12. But this provision of the UTSA states that while the Act displaces conflicting tort and restitution remedies, it does not displace "[c]ontractual remedies, whether or not based on misappropriation of a trade secret." NRS 600A.090(2)(a). Thus, Plaintiff erroneously asserts breach of contract based on the very provision in the Nevada Revised Statutes clarifying that the UTSA does not encompass contract claims.

Second, Plaintiff's remedies argument relies on the Ninth Circuit's statement that disgorgement of profits "may still be available to H&H through the successful prosecution of a statutory UTSA claim." ECF No. 164 at 11; *see also* ECF No. 137 at 7. However, the Ninth Circuit's comment acknowledged the remedy of disgorgement of profits, traditionally available in common law contract claims, may also be available as a remedy in misappropriation of trade secrets claims under the UTSA. The Ninth Circuit, in affirming the District Court's summary judgment on Plaintiff's breach of contract claims, did not revive Plaintiff's contract claims through its remedy reference. *Mason v. Sybron Corp.*, 955 F.2d 48 (9th Cir. 1992) (internal citations omitted) ("Disgorgement of profits is generally the appropriate remedy for misappropriation of a trade secret."). The Ninth Circuit's acknowledgement that the UTSA does not displace contract remedies (ECF No. 137 at 5) was the predicate for considering Plaintiff's existing contract claims on appeal, not an invitation to assert new ones. Plaintiff may seek damages under Count One of the proposed SAC in the form of disgorgement of profits, but Plaintiff may not assert a claim that was adjudicated and affirmed on appeal in the guise of a remedy request for a dismissed claim.

Finally, Plaintiff's claim cannot stand under the law of the case doctrine, which Defendants argue. ECF No. 163 at 26-27. Upon dismissal by the district court and affirmation by the appellate court, Plaintiff cannot raise a breach of the NDA or Settlement Agreement that was available at the time the FAC was filed. Under the law of the case doctrine, subsequent proceedings should follow

the law of the case established in a previous appellate decision "unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (*en banc*) (footnote, citation, and internal quotation marks omitted), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). *See also Chavez v. Bank of Am. Corp.*, Case No. C-10-0653 JCS, 2012 WL 1594272, at *4 (N.D. Cal. May 4, 2012) ("[t]he law of the case doctrine precludes a court from reconsidering an issue already decided by the same court or by a higher court in the identical action.") (internal quote marks and citation omitted).

Plaintiff argues neither a clearly erroneous decision resulting in manifest injustice nor an intervening controlling authority. Instead, Plaintiff points to alleged new evidence. However, the new evidence is evidence that was available in March 2022 *before* the Court issued its Order on summary judgment. *Compare* ECF Nos. 111 *and* 121. Plaintiff did not seek reconsideration of the Order denying summary judgment that reached its decision without considering this evidence (*see* docket generally), and there is no discussion of new evidence in the Order on Appeal. ECF No. 137. Plaintiff does not state (let alone suggest) it argued error to the Ninth Circuit based on the trial court's failure to consider the new evidence. ECF Nos. 157, 164. Plaintiff does not contend it sought a rehearing or a hearing *en banc* following the Ninth Circuit's affirmation. *Id*. In sum, Plaintiff had previous opportunities to raise the "new" evidence available in 2022 before summary judgment was granted, as well as in proceedings thereafter. In sum, the Court finds the law of the case doctrine directs that its purpose is to "accommodate changed circumstances" that are not present here. *See Arizona v. California*, 460 U.S. 605, 618-19 (1983).

Plaintiff's second cause of action fails for each of the reasons stated above. For these reasons the Court recommends denying Plaintiff's Motion to Amend to the extent Plaintiff seeks to reassert a breach of contract claim.

          3.      *Count Three: Statutory Injunction.*

Plaintiff's third claim in the proposed SAC seeks a statutory injunction under NRS 600A.040. ECF No. 157-1 at 16. However, Plaintiff mistakes a remedy provision for an independent

cause of action. *See Blanchard v. JP Morgan Chase Bank*, Case No. 2:11-cv-01127-ECR-PAL, 2012 WL 959353, at *4 (D. Nev. Mar. 21, 2012) ("Injunctive relief is a remedy, not a separate cause of action.") (internal citation omitted); *see also Iliescu v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 457 (Nev. 2022) (affirming dismissal of a separate count because plaintiff "pleaded injunctive relief as an independent cause of action"). Plaintiff may seek an injunction under Count One of the proposed SAC, but it may not plead a separate injunctive relief claim under NRS 600A.040. The Court recommends denying Plaintiff's Motion to Amend as to Count Three.

    4.  *Count Four: Declaratory Judgment.*

    Plaintiff's final claim in the proposed SAC seeks a declaratory judgment that the Settlement Agreement was an executory accord the violation of which revived Plaintiff's previously settled claims in *H&H I*. ECF No. 157-1 at 16. A claim for declaratory relief typically cannot sustain an independent cause of action. *Garcia-Pena v. MTC Financial, Inc.*, Case No. 3:17-cv-00319-RCJ-WCG, 2017 WL 4532194, at *5 (D. Nev. Oct. 10, 2017) ("declaratory judgment is a remedy that may be afforded to a party after he has sufficiently established and proven his claim.").

    Further, while the parties dispute at length whether the Settlement Agreement was intended to be a substituted contract or an executory accord, the Court need not decide that here. Even assuming that the Agreement was an executory accord, as Plaintiff contends, this would only be relevant if Plaintiff establishes breach of that accord. In *Johnson v. Utile*, 472 P.2d 335 (Nev. 1970) the Nevada Supreme Court discussed the distinction between an executory accord and a substituted contract finding that "[i]f the compromise provides for the acceptance in the future of a stated performance in satisfaction of the claim, the contract is an executory accord." *Id.* at 337. If a compromise extinguishes an existing claim, the agreement is a substitute contract. *Id.* "The distinction becomes vital in relation to the *remedies available* to the nonbreaching party if and when the compromise agreement is broken." *Id.* (emphasis added). "If an executory accord is breached, the nonbreaching party may sue either upon the original obligation or upon the compromise agreement." *Id.*

    Here, what is clear is that Plaintiff previously filed claims for breach of the Settlement Agreement that were adjudicated in favor of Defendants. ECF Nos. 121, 137. As pleaded, Plaintiff's

Fourth Cause of Action fails to identify a breach of an obligation not ruled upon. *Utile*, 472 P.2d at 337. Said simply, there is no breach of contract alleged by Plaintiff that was not adjudicated. This failure is fatal to its Declaratory Judgment claim.[4] Nonetheless, as Defendants concede, nothing in the Settlement Agreement terminated Defendant Chattem's prospective obligations under the NDA. ECF No. 163 at 22. Plaintiff retains the legal right to bring claims for any alleged breach of the NDA that occurred subsequent to the effective date of the Settlement Agreement that is not time barred. This may also allow Plaintiff to seek a declaratory judgment. Plaintiff cannot seek declaratory relief on an alleged executory accord in the absence of a breach.[5]

Because leave to plead Count Four fails to identify a viable cause of action, the Court recommends Plaintiff's Motion to Amend be denied as to this Count.

### III. Order

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to Amend (ECF No. 157) is GRANTED to the extent Plaintiff may file a Second Amended Complaint containing Count One of Plaintiff's proposed second amended complaint.

IT IS FURTHER ORDERED that Plaintiff must revise its proposed Second Amended Complaint and file the same within fourteen days of the date of this Order.

IT IS FURTHER ORDERED that Defendants' response to what will be the Second Amended Complaint once filed is due fourteen days after it is filed.

---

[4] Plaintiff argues at various points that newly disclosed materials from the DEA justify reasserting its breach of contract claim. ECF No. 157-1 at 21-22. The Court addresses these arguments above in Section B(2).

[5] Plaintiff cites *N.Y. Life Ins. Co. v. Gunwall*, 675 F.Supp. 3d 1126 (W.D. Wash. 2023), for the proposition that it must raise its claim that the Agreement was an executory accord now to avoid being barred from doing so by *res judicata*. ECF No. 157-1 at 23. But, in *Gunwall*, Plaintiff was barred from raising its claim because summary judgment was issued against it on the very issue it sought to reallege. *Gunwall*, 675 F.Supp. 3d at 1134. The same reasoning applies here as summary judgment was issued against Plaintiff on its claim that Defendants breached the Settlement Agreement, which is the essence of the Declaratory Judgment claim asserted. *Gunwall* offers no support for why Plaintiff must bring its claim for declaratory judgment now.

11

## IV. Recommendation

IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Leave to Amend be DENIED with respect to Counts Two, Three, and Four of Plaintiff's proposed Second Amended Complaint; provided, however, Plaintiff is not precluded from seeking the relief requested under Counts Two and Three as remedies under Count One.

Dated this 12th day of November, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court holds the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).