# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

H&H Pharmaceuticals, LLC,

               Plaintiff

v.

Chattem Chemicals, Inc., et al.,

               Defendants

Case No. 2:16-cv-02148-CDS-EJY

**Order Adopting Magistrate Judge's Amended Report & Recommendation**

[ECF Nos. 157, 160, 166, 169, 170, 181, 183]

       This is the second iteration of a lawsuit that began nearly twenty years ago. Before me now are plaintiff H&H Pharmaceuticals LLC's motion to file a second amended complaint (SAC) (ECF No. 157), Magistrate Judge Youchah's Report and Recommendation (R&R) (ECF No. 166), defendants' objection to the R&R (ECF No. 170), Judge Youchah's amended R&R (ECF No. 181), and H&H's objection to the amended R&R (ECF No. 183). Both objections received responses. *See* Pl.'s resp., ECF No. 173; Def.'s resp., ECF No. 188. Because I find that H&H's first amended complaint (FAC) fails to sufficiently allege a Nevada Uniform Trade Secrets Act (NUTSA) claim and that its SAC is futile, I overrule H&H's objections to the amended R&R and adopt it in full.

## I.      Background

###     A.  Factual background

       Resolution of a motion to amend typically requires consideration of only the facts presented in the motion and proposed amendment itself. Here, however, careful consideration of events and transactions spanning two lawsuits is required to ensure an accurate and thoroughly considered outcome. Magistrate Judge Youchah's recitation of the case history in her amended R&R is both useful and thorough, and I incorporate and repeat it here.

H&H is a Nevada limited liability company formed in 1999 by Jacob Hack and Richard Herman. ECF No. 157-1 at ¶ 8. H&H was established for the purpose of marketing proprietary methods Hack developed for processing raw opium and poppy straw into pharmaceutical ingredients. As H&H describes them, these processes involve methods for extracting the alkaloids morphine and thebaine from raw opium and poppy straw concentrate and converting these alkaloids into morphine, codeine, hydrocodone, oxycodone, and related salts. ECF No. 96 at 4. Collectively, these processes are referred to by H&H as the "H&H Conversion Methods." *Id.* H&H identifies "certain aspects" of the H&H Conversion Methods as its trade secrets (the "H&H Trade Secrets"). ECF No. 8 at ¶ 11. H&H also identifies the H&H Trade Secrets and other designs, technology, strategies, and plans relating to the H&H Conversion Methods as its confidential information (the H&H "Confidential Information"). *Id.* at ¶ 12.

In 2000, discussions began between H&H and defendant Chattem Chemicals, Inc., a corporation engaged in the manufacture of active pharmaceutical ingredients, on the possibility of Chattem accessing and evaluating the H&H Confidential Information, though the parties dispute the exact nature of these discussions. ECF No. 8 at ¶ 16; ECF No. 59 at ¶ 16. As a result of these discussions, H&H and Chattem entered into a Nondisclosure Agreement in November of 2000 (the "NDA") in which Chattem agreed not to disclose H&H Confidential Information or use the Confidential Information to make or sell any product for a period of ten years. ECF No. 89-7. The NDA further distinguishes between the ten-year prohibition on disclosing H&H Confidential Information and Chattem's agreement not to disclose or use the H&H Trade Secrets in perpetuity.[1] *Id.* After the NDA was executed, H&H shared H&H Confidential Information with Chattem in the form of three manuals. ECF No. 8 at ¶ 22. According to H&H, the processes described in the manuals included those for "Raw Gum Opium Processing into

---

[1] Although the terms of the NDA prohibit disclosure and use of the H&H Confidential Information and H&H Trade Secrets for different lengths of time—ten years for the former, perpetuity for the latter—H&H's proposed SAC only alleges misappropriation of its Confidential Information. ECF No. 157-1 at 11–13.

Alkaloids, Thebaine and Codeine Isolation from Opium, Codeine Synthetic Methylation, and Morphine Crude from Dutch/French Poppy Straw Concentrate." *Id.*

The parties dispute the events that transpired after these manuals were shared, with H&H alleging that there was an oral agreement between it and Chattem to enter into a partnership in which H&H licensed its Confidential Information to Chattem for the purpose of obtaining licenses from the Drug Enforcement Administration ("DEA"), and defendants denying any such agreement was ever made. ECF No. 59 at 4; ECF No. 96 at 5. Regardless of what the true nature of the parties' dealings may have been, the record shows that on February 9, 2001, Chattem applied to the DEA to register as a bulk manufacturer of several controlled substances including codeine, oxycodone, hydrocodone, thebaine, and morphine. ECF No. 96-8 at 10. The DEA approved this application on December 27, 2001. ECF No. 59 at ¶ 27. Apart from this registration, on February 27, 2006, the DEA granted Chattem a license for the importation of raw opium and concentrate of poppy straw. *Id.* at ¶ 28. Chattem has renewed its DEA licenses each year since. ECF No. 163 at 10.

The parties' disputes over the existence and nature of the supposed partnership between them eventually resulted in H&H filing a lawsuit against Chattem and David Blum, then Vice President of Chattem and owner of Chattem's former parent company, in Nevada state court on April 3, 2007 (the "Prior Litigation"). ECF No. 89-10. In its Prior Litigation complaint, H&H asserted several contract claims under Tennessee and Nevada law based on Chattem's alleged breach of the NDA as well as breach of the partnership agreement H&H claimed existed between the parties. *Id.* at 8–16. Plaintiff's complaint further asserted a claim for conversion under Nevada law, alleging that Chattem refused to return the confidential manuals upon H&H's request. *Id.* at 16–17. Finally, and most importantly for purposes of the instant motion to amend, H&H asserted common law claims of misappropriation of trade secrets, confidential information, and commercial properties under Nevada law. *Id.* at 18–22.

The parties settled the Prior Litigation on October 10, 2007, by entering into a Settlement Agreement. ECF No. 89-14. Paragraph 3 of the Settlement Agreement states:

> Effective upon payment in full by Defendant Chattem of the First Settlement Installment, and subject to the continuing, albeit prospective, effectiveness of the NDA, Plaintiff hereby releases Defendants from and against any and all Claims and Losses relating to, with respect to or arising from any act or omission on the part of either of the Defendants prior to the Effective Date.

*Id.* at 2. In addition, paragraphs 9 and 10 of the Settlement Agreement state H&H agrees "not to make any claim (including but not limited to a claim of misappropriation of Trade Secrets) against Chattem for Chattem's processing of concentrate of poppy straw," by means of dehydration or use of a non-reactive solvent, to produce the alkaloids, thebaine, or oripavine. *Id.* at 3. H&H and defendants have each represented at different points throughout the current litigation that the dehydration and solvent processes described in these paragraphs are "unrelated to the H&H Conversion Methods." ECF No. 96 at ¶ 21; ECF No. 163 at 11 ("Those processes are not H&H's technology."). Paragraphs 9 and 10 further state that H&H agrees not to bring claims based on Chattem's "processing of the thebaine [or oripavine] resulting from [these methods] into any active pharmaceutical ingredient." ECF No. 89-14 at 3.

The Settlement Agreement places additional obligations on Chattem. Paragraph 8 of the Settlement Agreement obligates Chattem to "[c]ertify on the first Business Day after the expiration of each twelve-month (12-month) period" for five years following the effective date "that Defendants are in Full Compliance" with the terms of the NDA. *Id.* at 3. Paragraph 24 of the Settlement Agreement requires Chattem to, upon any sale or transfer of a controlling interest in Chattem's voting shares or operating assets, provide H&H with a statement of the buyer's assumption of all obligations arising under the NDA and Settlement Agreement. *Id.* at 5.

B. **Procedural background**

H&H initiated the instant lawsuit in state court on August 9, 2016, alleging breach of the Settlement Agreement based on the November 24, 2008[2] sale of Chattem to defendant Sun Pharmaceuticals Industries, Inc. ECF No. 1 at 5–20. Defendants timely removed the case to federal court on September 12, 2016, and H&H filed its FAC shortly thereafter. ECF No. 8. In the FAC, H&H alleged that Chattem failed to give notice of its sale to Sun as required by paragraph 24 of the Settlement Agreement, and further that Chattem violated the NDA by disclosing the H&H Confidential Information to Sun. *Id.* at 8. H&H alleged that both defendants concealed Sun's purchase of Chattem in part by Chattem's continuing to certify that it was in compliance with the NDA as required by paragraph 8 of the Settlement Agreement despite the alleged breach. *Id.* at 12–13. Based on these allegations, H&H asserted claims for breach of contract, contractual and tortious breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, constructive fraud, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, negligence, unjust enrichment, and civil conspiracy. *Id.* at 7–18. On January 23, 2020, the court[3] granted, in part, the defendants' motion to dismiss, holding several of H&H's tort claims were insufficiently pled. ECF No. 58 at 29. The court gave H&H twenty-one days to file an amended complaint curing any deficiencies (*id.*); however, H&H did not file another amended complaint[4] and the case proceeded on the portions of H&H's FAC that survived dismissal. On December 28, 2022, the court granted summary judgment in favor of the

---

[2] Although the sale to Sun occurred in 2008, H&H avers that it did not become aware of the sale until October of 2013. ECF No. 8 at 6–7. H&H states that it began investigating once it did not receive Chattem's annual certification letter for 2013, because H&H believed the Settlement Agreement required Chattem to certify compliance with the NDA for a period of ten, not five, years. *Id.* H&H claims that it then became aware of "discrepancies" between the draft and signed versions of the Settlement Agreement, specifically with regards to paragraphs 8 and 24. *Id.* However, H&H does not challenge the validity of the Settlement Agreement in the FAC, mentioning the alleged discrepancies only as a way of justifying the delayed discovery of the defendants' alleged breach. *Id.*

[3] District Judge Gloria M. Navarro filed this order on January 23, 2020. *See* ECF No. 58. The case was randomly reassigned to me on May 24, 2025. *See* ECF No. 141.

[4] In its motion, H&H misstates the record asserting that "[t]here's no history of H&H being allowed to cure deficiencies and failing to do so." ECF No. 157 at 26.

defendants on all remaining claims. ECF No. 121. The court held that H&H failed to establish proof of damages for all but one remaining claim, noting that the only measure of damages asserted, disgorgement of profits, was unavailable under Nevada law except where authorized by statute. *Id.* at 7 (citing *Mitchell v. Nype*, 517 P.3d 905, 906 n.3 (Nev. 2022)). Regarding H&H's constructive fraud claim, the court held that H&H failed to establish the existence of a confidential relationship. *Id.* at 9.

The court's decision was appealed to the Ninth Circuit, which affirmed the grant of summary judgment as to H&H's contract claims but noted that the previously dismissed tort-based claims might survive as a claim for misappropriation of trade secrets under NUTSA. ECF No. 137. The Ninth Circuit remanded the case for the District Court to consider whether H&H's FAC properly stated a claim under NUTSA and, if not, whether H&H should be given leave to amend. *Id.* at 7.

H&H filed its motion to amend its FAC in July 2024. ECF No. 157. Magistrate Judge Elayna J. Youchah first granted this motion (ECF No. 158), and H&H filed its SAC the first time (ECF No. 160). The parties filed a joint unopposed motion for reconsideration of Judge Youchah's granting of the motion prior to the defendants' time to respond (ECF No. 159), and Judge Youchah granted the motion (ECF No. 162). Following the parties' briefing (Opp'n, ECF No. 163; Reply, ECF No. 164), Judge Youchah submitted an order and report and recommendation (R&R), ordering that H&H be allowed to file its SAC, permitting it to proceed with its misappropriation of trade secrets claim under NUTSA, but recommending that H&H not be allowed to maintain the other three claims listed in its proposed SAC. R&R, ECF No. 166. Defendants objected (ECF No. 170) and H&H responded (ECF No. 173). However, before the defendants timely objected, H&H filed another SAC. ECF No. 169. After the additional motions practice, Judge Youchah submitted an amended R&R, recommending that the H&H's motion to file its SAC be denied in its entirety. ECF No. 181.

1      **C.  Judge Youchah's amended R&R**

2         In the amended R&R, Judge Youchah first found that the FAC fails to state a

3   misappropriation of trade secrets claim. ECF No. 181 at 6–8. Acknowledging that "the specific

4   label given to a claim is not determinative," *Id.* at 6 (citing *Salazar v. Regents of the Univ. of Cal.*, 812 F.

5   App'x 410, 412–13 (9th Cir. 2020), Judge Youchah found that H&H had not sufficiently

6   explained "which of the 'certain aspects of the H&H Conversion Methods' are trade secrets and

7   which are merely confidential information," and did not do enough to "'describe the subject

8   matter of the trade secret with sufficient particularity to separate it from matters of general

9   knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries

10  within which the secret lies.'" *Id.* at 7 (quoting *Aristocrat Techs., Inc. v. Light & Wonder, Inc.*, 2024 WL

11  3104806, at *4 (D. Nev. June 24, 2024)). Judge Youchah then found that granting H&H's motion

12  to amend would be futile. *Id.* at 8–21.

13        The proposed SAC alleges four counts: (1) misappropriation of trade secrets under

14  NUTSA; (2) breach of the NDA and Settlement Agreement under NRS 600A.090(2)(a); (3) a

15  statutory injunction under NRS 600A.040; and (4) declaratory judgment declaring the

16  Settlement Agreement an executory accord. ECF No. 157-1 at 12–16. Analyzing the

17  misappropriation of trade secrets under NUTSA claim, Judge Youchah found that, "[i]n addition

18  to other allegations that precede the first claim for relief, the proposed SAC includes sufficient

19  particular factual allegations to state a misappropriation of trade secrets claim under [N]UTSA"

20  because the SAC "allege[s] Chattem was informed of and understood the outer boundaries of

21  the H&H Trade Secrets as well as what was allegedly misappropriated." ECF No. 181 at 9 (citing

22  ECF No. 157-1 at ¶¶ 9, 10, 13, 24, 30, 31). She also found that "these facts, taken as true,

23  sufficiently allege misappropriation of trade secrets in the form of Defendants' use of H&H's

24  technology in processing raw opium and poppy straw concentrate" but describes the sufficiency

25  finding as "a somewhat close call . . . ." *Id.*

26

Judge Youchah then analyzed what impact the Settlement Agreement had upon H&H's NUTSA claim. *Id.* at 10. She points to paragraph 18 of the Settlement Agreement, which states that H&H "has no property interest in any of Chattem's DEA registrations," and that "Chattem's continued ownership and/or renewal of any of Chattem's current DEA registrations does not constitute a violation of the NDA." *Id.* (quoting ECF No. 96-11 at 4–5). H&H "contend[ed] the proposed SAC refers to the DEA licenses not to claim a property interest, but as evidence that Defendants' technology has not changed since the licenses were initially issued." *Id.* (citing ECF No. 164 at 2). Judge Youchah found this to be contradictory, because H&H's Count 1 claims damages in the form of "profits since 2001 from sales of products that were created utilizing any part of H&H's Confidential Information, and products that Defendants have produced or sold *under authority of their DEA Licenses.*" *Id.* at 10–11 (quoting ECF No. 157-1 at ¶ 73). She also noted that "any attempt to claim damages based on alleged conduct occurring between 2001 and October of 2007 is also barred by paragraph 3, because H&H 'release[d] Defendants from and against any and all Claims and Losses relating to . . . any act or omission on the part of either of the Defendants prior to [October 10, 2007].'" *Id.* at 11 n.7 (quoting ECF No. 89-14 at 2). She then explains that, according to the SAC, the economic use of the Confidential Information derives entirely "from its advances in the art of manufacturing opiate-based pharmaceutical products, particularly those that the *DEA deems to be commercially acceptable.*" *Id.* at 12 (quoting ECF No. 157-1 at ¶ 67) (emphasis in Am. R&R). Thus, Judge Youchah found that "paragraph 18 of the Settlement Agreement renders futile any attempt to monetary damages—whether termed restitution or royalties—arising from commercial activities under the DEA licenses."[5] *Id.* Judge Youchah also found that the other claimed misappropriation in the proposed SAC—that "Chattem shared H&H's Confidential Information in the Manuals with Sun" had been fully

---

[5] She also recommends dismissing H&H's alternative damages claim for "a reasonable royalty for Defendants' misappropriation of H&H's Confidential Information," ECF No. 181 at 12–13 n.9 (quoting ECF No. 157-1, at ¶ 74), for being distinguished without any difference—royalties are typically "a percentage of profits earned based on a licensed product or technology[,]" *id.*

adjudicated as the breach of the NDA claims in the FAC, and, even if it had not, H&H failed to allege the necessary damages. *Id.* at 12 n.8.

In addition, Judge Youchah found several of H&H's arguments to be barred by judicial estoppel. ECF No. 181 at 13–17. First, in the proposed SAC, H&H distinguishes between the "actual" settlement agreement and "defendants' purported" settlement agreement, but in prior briefing H&H referred to the agreement it now calls "purported" as "the actual signed version of the Settlement Agreement" and even attached it to an earlier brief. *Id.* at 14–15 (comparing ECF No. 157-1, with ECF Nos. 22, 15, and 96). H&H did this despite allegedly noticing "discrepancies" between the final agreement and earlier drafts as early as 2013. *Id.* at 15 (citing ECF Nos. 8, 22). Because H&H did not raise the issue of the validity of the agreement earlier, and, in fact relied on its validity to make numerous arguments, Judge Youchah found that H&H should be judicially estopped from making such an argument now. *Id.* at 15–16 ("Having committed to this position throughout **eight years of litigation**, H&H may not reverse its stance now.") (emphasis added). Judge Youchah also found several other statements in H&H's briefing to be contradictory to its previous positions. *See id.* at 16.

Regarding Count 2 of the proposed SAC—the breach of the NDA and settlement agreement—Judge Youchah found that because the FAC, which included this claim, was adjudicated on the merits, and no new breach of contract had been claimed, this claim is futile. *Id.* at 17–19. "The Ninth Circuit's acknowledgement that the UTSA does not displace contract remedies (ECF No. 137 at 5) was the predicate for considering Plaintiff's existing contract claims on appeal, not an invitation to assert new ones." *Id.* at 18. She separately found that the law of the case doctrine barred this count because H&H "had previous opportunities to raise the 'new' evidence available in 2022 before summary judgment was granted, as well as in proceedings thereafter" but failed to do so. *Id.*

Regarding Count 3—the statutory injunction under NRS 600A.040—Judge Youchah found that this is a remedy provision, not an independent cause of action, and thus this count was likewise futile. Finally, with Count 4—for declaratory judgment that the Settlement Agreement was an executory accord, the violation of which revived Plaintiff's previously settled claims in the parties' original lawsuit—Judge Youchah found it futile because as pled, Count 4 fails to identify a breach of an obligation not previously ruled upon in this action. *Id.* at 19–20. Thus, finding all four of H&H's counts futile, Judge Youchah recommends that the motion to amend be denied.

## II.    Legal standard

"Any party wishing to object to a magistrate judge's findings and recommendations . . . must file and serve specific written objections with supporting points and authorities." LR IB 3-2(a). When a party timely objects to a magistrate judge's R&R, the court is required to "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

## III.    Discussion

### A.  The FAC fails to state a claim for misappropriation of trade secrets.

H&H begins its objection by arguing that Judge Youchah was incorrect to conclude that the FAC, which is currently operative, does not state a claim for misappropriation of trade secrets under NUTSA. ECF No. 183 at 19. It alleges that, at the pleading stage, "how parties contractually characterize their information poses no [N]UTSA issue so long as the information—however labeled—(1) has economic value and (2) is kept confidential." *Id.* at 20–21 (citing *Frantz v. Johnson*, 999 P.2d 351, 356 (Nev. 2000) and Nev. Rev. Stat. § 600A.030(5)). It avers that it adequately pleads misappropriation by "alleging the breach of a contractual obligation of nondisclosure," which it claims can survive even if it cannot independently sustain a breach of contract claim. *Id.* at 22. H&H asserts that the Ninth Circuit's remand order allowed it to

maintain the "breach" element even if it inadequately asserted damages on the breach of contract claim. *Id.* (citing ECF No. 137 at 6–7). Further, H&H argues that the FAC's allegations establish tortious and equitable claims that support its NUTSA claim, which the Ninth Circuit recognized were a separate avenue by which H&H could have pled a NUTSA claim. *Id.* at 22–23 (citing ECF No. 137 at 4–5). It goes on to argue that whether it labelled the information "confidential" or a "trade secret," it asserted in its FAC that "all of its confidential information 'holds independent economic value' and was the subject of reasonable efforts to maintain its secrecy—including through the imposition of a nondisclosure obligation on Chattem." *Id.* at 24 (citing FAC, ECF No. 8 at ¶¶ 14, 17–22). H&H claims that, if nothing else, its three manuals comprising the H&H Confidential Information that it disclosed to Chattem include thoroughly described contents that amount to trade secrets under NUTSA. *Id.* at 25. It claims it "generously detailed" its trade secret conversion methods and manuals, and "[g]oing further would have divulged the trade secrets themselves." *Id.* at 26 (citing ECF No. 8 at ¶¶ 10, 12, 22). It also argues that any question about sufficiency of trade secrets should be presented to a jury. *Id.* at 27.

In their response, the defendants argue that the magistrate judge's findings were correct.[6] ECF No. 188 at 8. They argue that the amended R&R only addressed whether H&H plausibly alleged what its trade secrets were—and nothing else—because, finding that it had not, Judge Youchah was required to find that the FAC failed to state a NUTSA claim. *Id.* The pleading standard, which defendants argue is not "heightened," to allege a trade secret is that a plaintiff need not "spell out the details of the trade secret," but it must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general

---

[6] Defendants point out that H&H did not object to Judge Youchah's conclusion that the FAC fails to plead the necessary fact to allege a NUTSA claim when she made the finding in her original R&R. ECF No. 188 at 8. However, because the outcome of that R&R allowed H&H to amend its FAC, there would have been no reason for H&H to make such an objection when it could have just rested on the SAC. Now, because Judge Youchah found that the SAC amounts to a futile amendment in her amended R&R, H&H has an interest in opposing the finding that the FAC fails to state claim because, should this court find that the SAC is futile, its claims would be dismissed entirely. Thus, I do not find its previous failure to object to the R&R improper.

knowledge in the trade or of special persons who are skilled in the trade." *Id.* at 9 (quoting *Aristocrat Techs.*, 2024 WL 3104806, at *4). This serves to "permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* (quoting *Aristocrat Techs.*, 2024 WL 3104806, at *4). They argue that H&H's statements about its methods in the FAC are far too general, failing to establish the boundaries of its trade secrets except for "certain" unidentified "aspects" of the "H&H Conversion Methods." *Id.* at 10.

I find that, considering everything H&H now alleges to be a trade secret encompassed in the FAC's allegations, the FAC fails to establish with sufficient clarity a trade secret under NUTSA. A trade secret is "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that" (1) derives independent value from not being "generally known" or "readily ascertainable" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* Nev. Rev. Stat. §§ 600A.030.

The parties dispute how specifically a trade secret must be alleged for a plaintiff's complaint to survive the plausibility standard of a motion to dismiss for failure to state a claim. H&H cites *Montgomery v. eTreppid Techs., LLC*, a 2008 case from this district which stated that "[c]ounterdefendants have not provided any authority that Nevada employs a rule that would require dismissal on a motion for failure to state a claim for failure to adequately identify the trade secret in the complaint" and "[e]ven in California, a party need do so only before discovery commences, not necessarily in the complaint or counterclaim." 2008 WL 11401776, at *6 (D. Nev. July 2, 2008). Defendants point to the 2024 District of Nevada case cited in Judge Youchah's amended R&R, which states that a plaintiff must "'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Aristocrat Techs.*, 2024 WL 3104806, at *4. Neither of these cases binds my analysis, and I was unable to find any Nevada case law on point

addressing this issue. Although in some areas "Nevada law differs from California's with respect to trade secret protections," *Nev. Indep. v. Whitley*, 506 P.3d 1037, 1044 (Nev. 2022), I am unconvinced by the *eTreppid* court's assertion that "failure to adequately identify the trade secret" is not a necessary element of the plausibility analysis that the court is obligated to consider if a party moves to dismiss, *see* 2008 WL 11401776, at *6. Notably, *eTreppid* was decided after *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) but before *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In the pre-*Twombly/Iqbal* world, the pleading requirement could be met by a statement merely setting forth the elements of the claim. But that changed after *Twombly*, where the Supreme Court clarified that to satisfy Rule 8(a)(2), a complaint must contain sufficient factual content "to state a claim to relief that is plausible on its face . . . ." 550 U.S. at 570. Two years later, and a year after *eTreppid*, that requirement was fortified in the *Iqbal* holding, which explained that to satisfy Rule 8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 556 U.S. at 678. Thus, *eTreppid*'s statement regarding the pleading standard is outdated. Without some base-level, cognizable description of the trade secret, it would not be possible for a defendant to adequately answer the complaint. Thus, I adopt the language of *Aristocrat*. *See Aristocrat Techs.*, 2024 WL 3104806, at *4 (holding that a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies").

      Under this standard, I find that, although close, H&H failed to sufficiently describe an alleged trade secret in its FAC. It gets closest with its description of its "H&H Conversion Methods." As described in the FAC, these are "floor-level chemistry and conversion processes, not available on the open marketplace and not generally publicly known, converting raw opium and concentrate of poppy straw into opiate-based raw materials by chemical extraction, recovery and conversion methods (the "H&H Conversion Methods")." ECF No. 8 at ¶ 10. This

sets out parameters—chemistry and conversion processes designed to convert raw opium and concentrate of poppy straw—that would put the defendants on notice of what alleged trade secret material H&H claimed under NUTSA. However, it then describes holding trade secrets "including, without limitation, certain aspects of the H&H Conversion Methods." *Id.* at ¶ 11. The use of "certain aspects" suggests that there are parts of the H&H Conversion Methods that are not, in fact, trade secrets. Even acknowledging that the complaint did not need to describe all of its NUTSA-qualifying trade secrets as "trade secrets," this paragraph of the complaint muddies the parameters set out by the previous one. Thus, I am unable to find that either of these claims sufficiently sets out a cognizable trade secret. Two additional parts of the complaint appear to claim trade secrets: (1) "confidential information, including . . . other designs, technology, and plans with respect to the H&H Conversion Methods and a report developed by Fluor Daniel and Jacobs Engineering regarding certain aspects of the H&H Conversion Methods" and (2) three manuals that included "several business methods, marketing strategies, and technological processes that H&H created and used in their manufacture if certain controlled substances . . . include[ing] . . . Raw Gum Opium Processing into Alkaloids, Thebaine and Codeine Isolation from Opium, Codeine Synthetic Methylation, and Morphine Crude from Dutch/French Poppy Straw Concentrate." *Id.* at ¶¶ 12, 22. The former's description of designs, technology, and plans is far too broad to provide any sort of concrete parameter, and its choice of the phrase "certain aspects" fails to offer any additional clarity. The latter's description of "several business methods, marketing strategies, and technological processes" circumscribes an almost limitless field of intellectual property. I do not find that anything in the FAC sufficiently describes a trade secret that would put the defendants on notice, and therefore the misappropriation of trade secrets claim fails. After this de novo analysis of the FAC, I therefore overrule the objection and adopt the amended R&R to the extent that it recommended dismissal of the FAC.

**B. H&H's proposed SAC is futile.**

The proposed SAC alleges four counts: (1) misappropriation of trade secrets under the UTSA; (2) breach of the NDA and Settlement Agreement under NRS 600A.090(2)(a); (3) a statutory injunction under NRS 600A.040; and (4) declaratory judgment declaring the Settlement Agreement an executory accord. ECF No. 157-1 at 12–16.

### 1. *Misappropriation of trade secrets*

The first claim in the proposed SAC alleges misappropriation of trade secrets under NUTSA. The proper analysis begins under the *Foman* factors[7] with futility because, if allowing the claim to proceed is futile, no other *Foman* factor need be analyzed. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend."). The analysis the court must perform when considering futility under Federal Rule of Civil Procedure 15(a) is "akin to that undertaken by a court in determining the sufficiency of a pleading challenged in a Rule 12(b)(6) motion to dismiss," *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1061 (D. Ariz. 2003), and therefore leave to amend should only be denied as futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).

Judge Youchah began her analysis by finding that the proposed SAC "includes sufficient particular factual allegations to state a misappropriation of trade secrets claim under" NUTSA. ECF No. 181 at 9 (citing ECF No. 157-1 ¶¶ 9, 10, 13, 24, 30, 31). The parties do not object to this finding, and therefore it requires no additional review. *See Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("[N]o review is required of a magistrate judge's report and recommendation unless objections are filed."); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

---

[7] *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court need not grant leave to amend where the amendment (1) prejudices the opposing party, (2) is sought in bad faith, (3) produces an undue delay in litigation, or (4) is futile.

Judge Youchah then found that H&H's NUTSA claim is nonetheless barred by the parties' settlement agreement paragraph 18, which states that H&H "has no property interest in any of Chattem's DEA registrations," and that "Chattem's continued ownership and/or renewal of any of Chattem's current DEA registrations does not constitute a violation of the NDA." ECF No. 181 at 10 (quoting ECF No. 96-11 at 4–5); *see supra* pp. 7–8. H&H objects to this finding, first arguing that this was some sort of misinterpretation of the parties' agreement. ECF No. 183 at 32–38. Its argument is one of convenience, because H&H claims that the "actual" settlement agreement is not the one previously attached in filings, but an earlier version of it that H&H alleges includes several different terms; that earlier version was attached for the first time to the SAC. *Id.* at 34. Thus, H&H claims that Judge Youchah's reliance on *any* terms from the parties "purported" settlement agreement was improper because it was not attached to its SAC and is therefore extrinsic. *Id.*

In response to this argument, the defendants cite *Matsugishi v. Bell Ventures, Inc.*, which recognized that a court can consider, at the motion to dismiss stage, "evidence on which a complaint necessarily relies 'if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached'" to the motion to dismiss. 2025 WL 522235, at *2 (D. Nev. Feb. 18, 2025) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). It argues that (1) the proposed SAC refers to the settlement agreement (which H&H conveniently calls the "purported" agreement); (2) the settlement agreement is central to H&H's SAC's claims, which include that "H&H disclosed its Confidential Information to Chattem . . . [with] an expectation that Chattem . . . would maintain the confidentiality of such information under the NDA and the Settlement Agreements,[8] and would not engage in any unauthorized disclosure or use thereof"; and (3) even if H&H claims

---

[8] Defendants note that H&H uses the term "Settlement Agreements" when it is referring to portions of what it calls the "Purported Settlement Agreement" and the "Actual Settlement Agreement" that have common terms. ECF No. 188 at 13 n.5.

the "purported" settlement agreement is not the final one, it never contests its authenticity. ECF No. 188 at 13.

Before addressing the rest of H&H's argument, I find it acceptable to consider the settlement agreement attached at ECF No. 96-11, which the defendants claim is the parties' agreement and H&H now claims is not controlling. Although it is generally true that the court should not consider extrinsic evidence when evaluating a complaint at the motion to dismiss stage, the exception to this rule, as set out by the defendants, applies. This agreement is undoubtedly essential to the claims, is referred to, and is not challenged as inauthentic. Thus, I consider the agreement—to include its paragraph 18.

H&H then argues that, even considering paragraph 18, the NUTSA claim is still not barred by the parties' "purported" settlement agreement. ECF No. 183 at 35. It explains that "[r]ead in isolation, this provision plainly disclaims a property interest in the DEA registrations themselves, and further suggests that there is a way Chattem can own and renew those registrations without violating its other obligations." *Id.* It points to paragraph 6, which states that:

> [n]otwithstanding any other provision of this Agreement, all provisions of the NDA shall remain in full force and effect and shall in no manner, other than with respect to Plaintiff's Release [¶ 3], be diminished, with the exception of the Agreement Non-Disclosure Provision, which shall have no prospective force or effect.

*Id.* at 36 (quoting ECF No. 96-11 at 2). Thus, it contends that because paragraph 18 is not one of the carveouts described in paragraph 18, "paragraph 6 makes clear that the defendants' NDA obligations extend even to their DEA license renewals." *Id.* And H&H argues that although it disclaimed property interest in the DEA licenses, Chattem would have had to "find an alternative technology and report the change to the DEA in its renewal applications" instead of continuing to use H&H's trade secret processes. *Id.* at 36–37. Because it did not do so, Chattem violated the NDA. *Id.* at 37. It states that Judge Youchah "never tries to harmonize paragraph 18 with paragraph 6 or with the NDA," reading the Settlement Agreement in a manner that rests on

one of two "absurd" premises: "One, that the value of H&H's trade-secret conversion process lay solely in its ability to be cited to 'obtain[ ] DEA licenses.' Or two, that Chattem's possession of DEA licenses entitled it to use forevermore any trade secrets used in initially obtaining those licenses, without compensation to H&H." *Id.* (quoting ECF No. 181 at 16). The former, H&H argues, is "self-evidently false" because, although DEA registration is essential for all narcotics, "H&H's technology is not merely a ticket to registration; it underlies Chattem's (and now Sun's) manufacturing process, the activities from which defendants directly profit." *Id.* at 37–38. The latter, H&H asserts, would "eviscerat[e] paragraph 6" because it would make anything "authorized by the DEA licenses . . . *per se* nonactionable, even if Chattem violated an obligation to cease reliance on H&H's trade secrets" and "[i]nterpreting paragraph 18 in this way would mean that, notwithstanding paragraph 6 and the NDA, Chattem in fact has complete freedom to use H&H's trade-secret technology as it wishes, again with no compensation to H&H." *Id.*

In their response, the defendants argue that H&H's attempt to "harmonize" the agreement ignores the plain language and purpose of the agreement. ECF No. 188 at 19–23. It states that paragraph 6's citation to the NDA requires that Chattem not "exploit" H&H's information or "make, use or sell a product or service embodying, derived from, or in any other way arising from" the "trade secrets." *Id.* at 21 (quoting NDA, ECF No. 89-7 at 2). Defendants cite paragraph 3 of the Settlement Agreement, which states that H&H releases "any and all Claims and Losses relating to, with respect to or arising from any act or omission" before October 10, 2007. *Id.* Thus, the defendants argue that H&H released its claim that Chattem misappropriated H&H's trade secret information by "using it to get DEA licenses" because Chattem was granted the DEA licenses prior to October 10, 2007. *Id.* Defendants explain that this fully "harmonizes" the Settlement Agreement: in exchange for $925,000, H&H disclaimed any claim it may have had regarding Chattem's use of its processes and any misappropriation claim regarding the grant or renewal of the DEA licenses; paragraph 6 applies only to any *future* conduct in violation of the NDA. *Id.* at 21–22.

I find that any amendment of the trade secret misappropriation claim is futile because the trade secret misappropriation claim in the SAC is not adequately pled. As discussed further below, I accept that the parties signed the Settlement Agreement and included the relevant paragraphs—3, 6, and 18—in their executed document. The SAC is unequivocal that its claims arise out of the DEA Licenses acquired based on what H&H alleges was Chattem's originally misappropriated technology. *See* ECF No. 157-1 at ¶ 73. H&H does not even attempt to disguise this fact, listing among its damages "profits since 2001 from sales of products that were created utilizing any part of H&H's Confidential Information, and products that Defendants have produced or sold under authority of their DEA Licenses." *Id.* In all its pontificating about "harmonizing" the Settlement Agreement, H&H does not have an answer to how its claimed damages harmonize with the third paragraph of the agreement, which disclaims any claim **prior to October 10, 2007.** As the amended R&R correctly notes, the SAC fails to allege how H&H's alleged confidential information was used in any way other than is authorized by the DEA licenses. ECF No. 181 at 11–12 (citing ECF No. 157 at 9 ("Chattem utilized H&H's Confidential Information when Chattem applied for DEA licenses."), at 12 ("Chattem [has] been using H&H's Confidential Information since Chattem first applied for DEA licenses in 2001."), and at 10–11 (Chattem "has always relied upon the H&H Conversion Methods" for "the extraction of thebaine, morphine, codeine, hydrocodone, and oxycodone from raw opium and poppy straw concentrate.")). I find that the plain language interpretation of the Settlement Agreement is that the defendants, in exchange for valuable consideration, were permitted to continue using DEA licenses unimpeded by any further claims from H&H on the licenses or how they were acquired. This neatly "harmonizes" with paragraph 6 and does not produce an absurd result, because Chattem was still precluded from violating the parties' NDA in any capacity after the Settlement Agreement's October 10, 2007 effective date. Thus, even read in the light most favorable to H&H, its claims here are futile.

In the amended R&R, Judge Youchah acknowledges that the SAC also alleges that "Chattem shared H&H's Confidential Information in the Manuals with Sun." ECF No. 181 at 12 n.8 (quoting ECF No. 157-1 at ¶ 58). Judge Youchah found that, although this could potentially be a new claim for relief outside the scope of the Settlement Agreement, this was already adjudicated in the defendants' favor and therefore H&H no longer can make this claim. *Id.* (citing ECF No. 121 at 7 and ECF No. 137 at 6). H&H objects arguing that the Ninth Circuit only concluded that H&H failed to allege damages on its breach of contract claim, not breach. ECF No. 183 at 46–47. Defendants do not respond to this argument.

Even accepting H&H's position, I still find that this claim is insufficiently pled in the SAC. In total, the entirety of the unauthorized sharing allegation is split between two paragraphs in H&H's SAC: (1) "Chattem shared H&H's Confidential Information in the Manuals with Sun when Sun acquired Chattem. Chattem and Sun thus misappropriated H&H's Confidential Information," ECF No. 157-1 at ¶ 58; and (2) "Defendants breached the NDA and the Settlement Agreements. Chattem disclosed and shared H&H's Confidential Information with Sun without authorization or H&H's consent," *Id.* at ¶ 88. Aside from these two statements being essentially duplicative, H&H does not provide any additional detail regarding this alleged sharing and does not explain why it is likely that Chattem shared the manuals. I find that this is too speculative to allege a cognizable misappropriation claim. Thus, even accepting as true H&H's allegations, this claim would be futile for failure to sufficiently overcome the plausible pleading requirement. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Relevant here is Judge Youchah's finding that judicial estoppel bars H&H from arguing that the "purported" settlement agreement is not the actual settlement agreement—specifically that paragraphs 9 and 10 of the "purported" settlement agreement were not in the "actual" settlement agreement, and H&H never agreed to it. Judge Youchah relied on the fact that H&H has previously argued that the document it now calls the "purported" settlement agreement was, in fact, "the actual <u>signed</u> version of the Settlement Agreement attached to Defendants' Motion

as Exh. 2 . . . ." ECF No. 181 at 14 (quoting ECF No. 22 at 12). The document H&H referred to in

its argument at ECF No. 22 contained paragraphs 9 and 10. *See* Defs.' Ex. 2, ECF No. 15 at 51–58.

H&H also attached that same version of the Settlement Agreement—which included

paragraphs 9 and 10—to its ***own*** opposition to the defendants' motion for summary judgment.

*See* ECF No. 96-11 at 3.

      "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent

positions, precludes a party from gaining an advantage by taking one position, and then seeking

a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*,

94 F.3d 597, 600–01 (9th Cir. 1996) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H.

Cooper, Fed. Practice and Proc. § 4477 (1981 & Supp. 1995)); *Yanez v. United States*, 989 F.2d 323,

326 (9th Cir. 1993); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). "Judicial estoppel is

intended to protect against a litigant playing fast and loose with the courts . . . . Because it is

intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a

court at its discretion." *Russell*, 893 F.2d at 1037. Judicial estoppel applies to a party's stated

position whether it is an expression of intention, a statement of fact, or a legal assertion. *Helfand

v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997) (internal quotation omitted). "Judicial estoppel is

designed not only to prevent a party from gaining an advantage by taking inconsistent positions,

but also because of 'general consideration[s] of the orderly administration of justice and regard

for the dignity of judicial proceedings,' and to protect against a litigant playing fast and loose

with the courts." *Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165, 1171 (D. Nev. 2011).

There is generally a three step process a court must consider:

> First, courts determine whether "a party's later position [is] clearly inconsistent
> with its earlier position." *New Hampshire* [*v. Maine*], 532 U.S. 742[, 743 (2001)].
> Second, courts consider whether a litigant successfully persuaded a court to accept
> one position, so that judicial acceptance of an incompatible position in a
> subsequent adjudication "would create the perception that either the first or the
> second court was misled." *Id.* Finally, courts take into account "whether the party
> seeking to assert an inconsistent position would derive an unfair advantage or
> impose an unfair detriment on the opposing party if not estopped." *Id.*

*Id.* These factors are not "inflexible prerequisites or an exhaustive formula" for the application of the doctrine. *New Hampshire*, 532 U.S. at 751.

Regarding the first factor, H&H argues that its position was not inconsistent because in ECF No. 22, responding to the defendants' motion to dismiss, the context around the quoted language was that H&H was in the process of explaining "the [Purported] Settlement Agreement is materially different than the draft agreements the parties were exchanging during the negotiations of the agreement." ECF No. 183 at 40 (quoting ECF No. 22 at 11). It claims that it "would be an odd setting to abandon claims in the complaint. Had H&H intended to do so, it would have needed to do so clearly." *Id.* Thus, H&H argues it was merely arguing in the alternative at the Rule 12(b)(6) motion to dismiss stage. It argues that its SAC argument "*reiterates* the parties' dispute as to the controlling version of the settlement agreement[,]" and its attachment of the "purported" settlement agreement to its opposition to the summary judgment motion was because H&H "lacked a copy of the parties' actual agreement . . . . Reliance on it reflects necessity, not acquiescence." *Id.* at 41. H&H then argues that its reliance on the settlement agreement was not intended to gain an advantage. *Id.* at 42. Finally, citing a non-binding, out-of-circuit decision, H&H argues that it never succeeded in convincing the court to accept its prior inconsistent position and "even an intentional misrepresentation 'threatens only the integrity of the parties, not of the court.'" *Id.* (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

In response, the defendants note that this position is entirely inconsistent with H&H's litigation conduct previously, which included in its FAC stating that "[o]n October 10, 2007, the Parties entered into the Settlement Agreement, which is a valid and binding contract." ECF No. 188 at 14 (quoting ECF No. 8 at ¶ 48 and citing ECF No. 8 at ¶¶ 59 and 97). As to the "alternative argument" claim, the defendants argue that "H&H noted the prior draft issue to establish 'the starting point for H&H learning that Chattem had in fact breached the Settlement Agreement[.]'" *Id.* at 15 (quoting ECF No. 22 at 12).

I find that judicial estoppel on the validity of the Settlement Agreement that includes paragraphs 9 and 10 is entirely appropriate in these circumstances. First, it is wholly disconcerting that H&H tries to finagle an argument that it did not take inconsistent positions. Whether it mentioned prior versions of the agreement or not in earlier filings, **it has consistently stated for almost the entire *nine-year* history of this case that the "purported" settlement agreement was binding on the parties.** Only now, when it would be of great assistance to H&H if the "the actual signed version of the Settlement Agreement," ECF No. 22 at 12 (emphasis in original), were voided, does the validity of this agreement suddenly become an issue. And, of course, H&H would derive an unfair advantage—not from its original position, but from taking its new one, opening up this nine-year-old case to an entirely new legal avenue for H&H to attempt to exploit. This is exactly the sort of gamesmanship that the judicial estoppel doctrine exists to prevent. *See Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984), *cert. denied*, 469 U.S. 1197 (1985) (The policy underlying the doctrine is a "'general consideration of the orderly administration of justice and regard for the dignity of judicial proceedings.'").

Moreover, even if the court did not side with the ultimate conclusion of H&H's oppositions in which it relied on the "purported" settlement being valid, H&H and the defendants, through their litigation, nonetheless convinced the court that the "purported" settlement agreement was, indeed, valid. "A party successfully persuades a court to accept the party's earlier position when the court 'accept[s] and relie[s] upon' the position 'when making its ruling.'" *Perez v. Discover Bank*, 74 F.4th 1003, 1009 (9th Cir. 2023) (quoting *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009)). In ruling on the motion to dismiss the FAC, the court accepted that the parties—including H&H—did "not dispute the validity of the Settlement Agreement . . . ." ECF No. 58 at 6. Although not stated as explicitly, the order granting the defendants summary judgment likewise relied on the validity of the settlement agreement. *See* ECF No. 121 at 3 ("Plaintiff and Chattem ultimately reached a settlement

agreement in the 2007 lawsuit, which then became the subject of the instant lawsuit."). At no time before District Judge Navarro did H&H contest the validity of the settlement agreement: its attempt to do so now is embodiment of playing "fast and loose."

Finding that all three factors weigh in favor of finding that H&H is judicially estopped from arguing that the settlement agreement was invalid, I find that judicial estoppel is appropriate here. I therefore overrule H&H's objection and adopt the amended R&R to the extent it found that amendment to the misappropriation of trade secrets claim, as alleged in the proposed SAC, is futile.

### 2. Breach of contract claim regarding NDA and Settlement Agreement

Plaintiff's second claim in the proposed SAC is a breach of contract claim alleging violations of the NDA and the Settlement Agreement. ECF No. 157-1 at 14. The FAC alleged breach of these same agreements. ECF No. 8 at ¶¶ 52, 53, 68. In the earlier dismissal order, this court granted summary judgment on all of the allegations in the FAC that appeared in its breach of contract claim, and the Ninth Circuit affirmed. ECF Nos. 121 at 7; 137 at 6. As Judge Youchah noted, "Plaintiff's proposed SAC alleges no breach of contract subsequent to what is alleged in the FAC." ECF No. 181 at 17 (citing ECF No. 157-1). Instead, H&H argues that it is bringing a new contract claim under NUTSA. *See* ECF No. 164 at 10.

In the amended R&R, Judge Youchah points out that H&H cites NRS 600A.090(2)(a) as the basis for its contract claim, but NUTSA is clear that it does not displace "[c]ontractual remedies, whether or not based on misappropriation of a trade secret." EF No. 181 at 17 (quoting Nev. Rev. Stat. § 600A.090(2)(a)). She also stated that the Ninth Circuit, in acknowledging disgorgement of profits as a remedy, was doing so in reference to the NUTSA claim, not the breach of contract claim, which it did not revive. *Id.* at 17–18. Judge Youchah was clear: "The Ninth Circuit's acknowledgement that the UTSA does not displace contract remedies (ECF No. 137 at 5) was the predicate for considering Plaintiff's existing contract claims on appeal, not an invitation to assert new ones." *Id.* at 18. Finally, under the law of the case doctrine, Judge

1  Youchah held that because the new evidence underlying H&H's claim was available to it prior

2  to the summary judgment order, the district court's and Ninth Circuit's decisions rejecting the

3  breach of the NDA and Settlement Agreement claim is settled. *Id.* at 18–19.

4        In the objection, H&H sets out a confusing set of arguments nestled among its

5  arguments about NUTSA. *See* ECF No. 183 at 44–49. It argues that the law of the case doctrine

6  should not apply because the Ninth Circuit did not "specifically bar[ ]" this conception of its

7  contract claim and did not forbid the introduction of additional evidence. *Id.* at 44–45, 48

8  (inexplicably citing *Diversified Cap. Corp. v. North Las Vegas*, 590 P.2d 146, 150 (Nev. 1979), a state

9  case).[9] It argues that the Ninth Circuit held that the breach of contract disgorgement of profits

10  remedy must be premised on NUTSA, and that the amended R&R mistakenly rejected H&H's

11  attempt to comply in its SAC. *Id.* at 46–48.

12        In response, the defendants argue that H&H repackages its misappropriation claim as a

13  breach of contract claim, that the Ninth Circuit dismissed the breach of contract claim, and *still*

14  has a remedy problem because the only remedy here is actual damages, for which the Ninth

15  Circuit already held H&H has no evidence. ECF No. 188 at 23–25.

16        The Ninth Circuit's order regarding the disgorgement of profits remedy reads as follows:

17      Although H&H claims that Nevada's common law of contract would recognize a
18      disgorgement remedy here, H&H has cited no Nevada authority that supports
       such a contention, nor have we located any. Accordingly, we affirm the district
19      court's entry of summary judgment on those claims in favor of Chattem.

20

21

22

23

---

24  [9] I also reject outright H&H's argument that "[t]he Ninth Circuit would not have remanded if there were
   no possibility of a viable amendment" under paragraph 18 of the parties' Settlement Agreement. *See* ECF
25  No. 183 at 45. The Ninth Circuit made no final determinations regarding amendment: it remanded for this
   court to consider whether the FAC sufficiently pled a NUTSA claim and whether amendment would be
26  appropriate if not—*not* that, should the FAC fail to sufficiently state a NUTSA misappropriation claim,
   that amendment must be granted. *See* ECF No. 137.

> To the extent that disgorgement of profits—an equitable remedy, *see Lathigee v. Brit. Columbia Sec. Comm'n*, 477 P.3d 352, 356–57 (Nev. 2020)—is available to H&H to redress Chattem's alleged contractual breaches relating to H&H's trade secrets, a modified form of that equitable remedy may still be available to H&H **through the successful prosecution of a statutory UTSA claim.** *See* Nev. Rev. Stat. § 600A.050. Whether Chattem breached a contractual promise to maintain the secrecy of H&H's trade secrets or to limit their use by Sun is relevant to whether Chattem or Sun misappropriated them. *See id.* §§ 600A.030(1)(e), (2)(c)(2)(II), (III). If Chattem's contractual breach was willful, H&H could even be entitled to exemplary damages. *See id.* § 600A.050(2).

ECF No. 137 at 6–7 (emphasis added). Nothing in this language opens the door for H&H to introduce a new contract claim based upon NUTSA or now pointing to a disgorgement of profits claim. Quite the opposite. This order clearly *affirms the grant of summary judgment* on the breach of contract claim premised on the same allegations as the SAC. The Ninth Circuit made very clear that H&H did not have any case law to support its position in the first place, and then stated that, perhaps, on a successful NUTSA, "a modified form of that equitable remedy may still be available . . . ." *Id.* at 7. Thus, the Ninth Circuit held that H&H might be able to successfully argue its claimed breach of contract remedies as a part of its NUTSA claim, *not the other way around*.

"'When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case was established by the appellate court.'" *United States v. Luong*, 627 F.3d 1306, 1309 (9th Cir. 2010) (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977)). Even if its reasoning was based on damages, the Ninth Circuit affirmed summary judgment on the same breach of contract claim H&H now attempts to repackage and litigate again.

Under the law of the case doctrine, subsequent proceedings should follow the law of the case established in a previous appellate decision "unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (*en banc*) (footnote, citation, and internal

quotation marks omitted), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)).

The only claimed reason for why the court should reject the law of the case doctrine in this case—new evidence—Judge Youchah correctly pointed out was available prior to the order on summary judgment, and H&H never sought reconsideration due to the new evidence, did not discuss the new evidence on appeal, and did not seek rehearing or *en banc* review of the Ninth Circuit's decision. ECF No. 181 at 18 (citing ECF Nos. 111, 121, 137, 157, 164). This is not "new" evidence. Rather, it is evidence that is newly convenient to H&H. Therefore, I find that Judge Youchah was correct to apply the law of the case doctrine to the contract claim. Granting H&H's motion and allowing it to file the SAC would be futile. I therefore overrule H&H's objections and adopt Judge Youchah's amended R&R to the extent it found the breach of contract claim in the SAC futile.[10]

### 3. *Other claims*

H&H acknowledges in its objection that "[t]he misappropriation claim undergirds the remaining claims" for a statutory injunction and for declaratory judgment that the Settlement Agreement was an executory accord. ECF No. 183 at 49–50. The statutory injunction—premised on NRS 600A.040—is a remedy, not an independent claim. *See Blanchard v. JP Morgan Chase Bank*, 2012 WL 1032485, at *4 (D. Nev. Mar. 26, 2012) ("Injunctive relief is a remedy, not a separate cause of action."). Judge Youchah found there could be no statutory injunction available where the NUTSA claim fails. ECF No. 181 at 19. H&H's only objection is that it believes it successfully alleged a NUTSA claim. *See* ECF No. 183 at 49. Because I find that it did not, I overrule the objection and adopt the amended R&R to the extent it found H&H's third claim in its SAC futile.

---

[10] And, because H&H has failed also to state a viable NUTSA statutory claim, the "disgorgement of profits" remedy is wholly unavailable. *See* ECF No. 137 at 6–7 ("To the extent that disgorgement of profits . . . is available to H&H to redress Chattem's alleged contractual breaches relating to H&H's trade secrets, a modified form of that equitable remedy may still be available to H&H through the successful prosecution of a statutory UTSA claim.").

As to its declaratory judgment claim seeking the Settlement to be declared an executory accord, Judge Youchah first noted that "[a] claim for declaratory relief typically cannot sustain an independent cause of action." ECF No. 181 at 19 (citing *Garcia-Pena v. MTC Fin., Inc.*, 2017 WL 4532194, at *5 (D. Nev. Oct. 10, 2017) ("[D]eclaratory judgment is a remedy that may be afforded to a party after he has sufficiently established and proven his claim.")). Additionally, she found that there has been no breach of the Settlement Agreement that has not already been adjudicated, and, in Nevada, whether a contract is an executory accord as opposed to a substituted contract is only relevant when a plaintiff establishes a breach of the alleged accord. *Id.* at 19–20 (citing *Johnson v. Utile*, 472 P.2d 335, 337 (Nev. 1970) ("The distinction becomes vital in relation to the remedies available to the nonbreaching party if and when the compromise agreement is broken. If an executory accord is breached, the nonbreaching party may sue either upon the original obligation or upon the compromise agreement.").

In its objection, H&H argues that the court never adjudicated the *breach* element of the breach of contract claim, only the damages portion, and the alleged contractual breaches properly underlie this claim for declaratory relief. ECF No. 183 at 50. In response, the defendants argue the merits of the issue, stating that the Settlement Agreement extinguished any existing claim from before October 10, 2007, in exchange for compensation; the existence of the NDA does not transform the Settlement Agreement into an accord. ECF No. 188 at 26.

I agree with Judge Youchah that there is no reason to evaluate the merits of this requested declaratory judgment in order to find amendment of the claim futile. "The requirement that a case or controversy exist under the Declaratory Judgment Act is 'identical to Article III's constitutional case or controversy requirement.' If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction. *Id.*" *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994)). For a party seeking declaratory judgment, "the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard,

namely, whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, having found that H&H's NUTSA, breach of contract, and statutory injunction claims are futile, the only remaining claim is this declaratory judgment claim. I acknowledge that whether the Settlement Agreement is an executory accord may present an issue in the future should H&H be able to raise legitimate claims against the defendants under NUTSA or a breach of the contract for actions undertaken after the filing of the FAC, but there is no substantial controversy between the parties in need of adjudication right now.[11] Thus, the declaratory judgment action, alone, is futile. I therefore overrule H&H's objections and adopt the amended R&R in its entirety.

Given the age of this case, together with H&H's previous opportunities to amend, and the fact that its proposed amendment is futile, this case is dismissed with prejudice. *See Sehat v. Progressive Universal Ins. Co. of Illinois*, 2016 WL 8199188, at *3 (D. Or. Nov. 22, 2016), *report and recommendation adopted sub nom. Sehat v. Progressive Universal Ins.*, 2017 WL 462187 (D. Or. Feb. 2, 2017).

**IV.    Conclusion**

IT IS THEREFORE ORDERED that H&H's objection **[ECF No. 183] to the R&R is OVERRULED.**

IT IS FURTHER ORDERED that Judge Youchah's amended R&R **[ECF No. 181] is accepted and adopted in its entirety**, therefore H&H's motion to amend, seeking leave to file a second amended complaint, **[ECF No. 157] is DENIED.** The original R&R **[ECF No. 166] is moot.**

---

[11] I clarify that this statement in no way suggests that H&H has a legitimate claim that the Settlement Agreement is, in fact, an executory accord. Nor should this telegraph to the parties the court's belief that H&H would be unsuccessful in such a claim. I note this only to explain that I am unable to address this issue either way because it is unripe, and the court will not issue advisory opinions. *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010) (federal courts may not issue advisory opinions).

IT IS FURTHER ORDERED that, in accordance with this order, H&H's two second amended complaints, which were filed prior to final adjudication of its motion to amend, [ECF No. 160] and [ECF No. 169] are STRICKEN.

Because this case is dismissed with prejudice, the Clerk of Court is kindly instructed to enter judgment in favor of defendants Chattem Chemicals, Inc. and Sun Pharmaceuticals Industries, Inc., and to close this case.

Dated: August 29, 2025

_____
Cristina D. Silva
United States District Judge

30